UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CURTIS YOUNG | CIVIL ACTION |
| VERSUS | NO: 18-4464 |
| FREEPORT MCMORAN OIL & GAS, LLC, ET AL. | SECTION: "A" (2) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is a civil action brought by plaintiff Curtis Young pursuant to the Jones Act and general maritime law against his employer, defendant Offshore Marine Contractors, Inc. ("OMC"). Plaintiff seeks damages for personal injuries allegedly sustained while working as a deckhand aboard the L/B JAMIE G. EYMARD. Plaintiff alleges that on August 29, 2016, while the vessel was on navigable waters, he was injured when an unsecured ladder fell on his shoulder and back areas. Plaintiff seeks recovery for back ailments that he contends are causally-related to the incident aboard the JAMIE EYMARD.

Defendant disputes Plaintiff's contention that he sustained an injury on August 29, 2016 while working aboard the vessel.

The case was tried to the Court, sitting without a jury, on August 21-22, 2019. Having considered the testimony and evidence at trial, the depositions submitted in lieu of live testimony, the arguments of counsel, and applicable law, the Court now enters the following Findings of Fact and Conclusions of Law in accordance with Federal Rule

1

of Civil Procedure 52(a). To the extent that any finding of fact may be construed as a conclusion of law, the Court hereby adopts it as such. To the extent that any conclusion of law constitutes a finding of fact, the Court adopts it as such.

## I.     FINDINGS OF FACT

On August 29, 2016, plaintiff Curtis Young was assigned to the L/B JAIME G. EYMARD, a vessel owned and operated by OMC. The JAIME EYMARD is a lift boat with three leg towers used to jack the vessel up and down. Young was an experienced seaman and experienced at working on lift boats. His job was physically demanding.

At the time of trial, Young had been employed off and on by OMC for roughly 16 years, intermittently from 2003 until trial in 2019. During his employment Young had been subject to random drug testing. In recent years Young had not failed a drug test. But it is unclear how many times after 2015 Young was actually selected for random drug testing. Even if selected for drug testing, legal drugs taken pursuant to a valid doctor's prescription would not trigger a positive result.

In connection with his re-hire in September 2013, Young did not divulge that he had pre-existing back pain. At the time Young did not believe that he had significant back problems. Young's medical records indicate, however, that he had made the first of many visits to Dr. Anu Vellanki's medical office in January 2010, wherein he complained of non-radiating back pain of moderate intensity in his lumbar spine region.

There is no evidence that Young sought medical treatment for back pain until five years later when on January 5, 2015 he went to the emergency room complaining of recurring low back pain. The medical record associated with that visit states that the

problem had started "several weeks ago." In fact, in December 2014, while working aboard another of OMC's vessels, Young requested and obtained 100 Aleve caplets.

On January 6, 2015, the day immediately following the emergency room visit, Young treated with Dr. Anu Vellanki and again complained of low back pain, with a self-reported severity level of 10/10. The symptoms were again characterized as a chronic problem with an acute exacerbation. Dr. Vellanki prescribed pain medication (Norco) and a muscle relaxer.

The next time Young was off hitch was January 21, 2015, and on January 28, 2015, he returned to Dr. Vellanki with the same complaints. The doctor recommended physical therapy to Young, and he recommended that Young see an orthopedist and seek physical therapy. Dr. Vellanki prescribed Mr. Young 60 tramadol to be taken twice a day with two refills, and 45 cyclobenzaprine, a muscle relaxer, with another two refills. This is an aggregate 90-day supply of pain medication and muscle relaxers.

Young worked until February 18, 2015. On February 24th, Young saw an orthopedic surgeon, Dr. Chad Loup. He again complained of lower back pain. He was recommended physical therapy and an MRI, and he was prescribed more medication. He filled the prescription, but he did not get the MRI or attend physical therapy. Instead, he returned to work.

On March 24, 2015, while off hitch, Young went to the Willis Knighton emergency room with the same complaints of back pain for which he had seen Dr. Loup and Dr. Vellanki. He again obtained a prescription for narcotic pain medication.

At no time did Young disclose to OMC that he was experiencing recurring back

3

pain for which he was taking prescription pain medication and muscle relaxers.

Young left OMC's employment on May 31, 2015 for another job with Boise Cascade where he was subsequently terminated. Young re-applied at OMC and he was conditionally re-hired on July 28, 2015. On that date, Young filled out a medical questionnaire in which he admitted that he had high blood pressure and took medication for that condition but he checked "N" to whether he had "recurrent neck/back pain." The form is ambiguously worded as follows: "Circle Y for YES and **N for NO if you currently have the following symptoms or have in the past**." (Exhibit 13 Bates 428) (emphasis added).

Shown by the months of consistent treatment starting in January 2015, Young had significant, ongoing back pain, which he did not divulge to OMC. Young knew that he would not have been rehired had he disclosed this to OMC.

The very day after being hired back at OMC, Young saw Dr. Vellanki again, and he complained of low back pain. Again, in September and December of 2015, and then in January, February, April, June, and July of 2015, Young saw Dr. Vellanki with the same complaints of pain in the lower back and received the same treatment: muscle relaxers and opiate pain pills.

All witnesses agreed that Young was a hard worker, never complained of pain, always performed his job duties without restriction, limitation, or complaint, and was never observed to be using prescription drugs.

The Court does not credit Young's contention that he did not take the prescribed medications. Young filled the prescriptions. The Court does not believe that Young took

4

the time to fill the prescriptions merely to discard the pain medications that he received. The reason that Young repeatedly visited the physicians was to obtain those medications.

The Court likewise does not credit Young's contention that all of the different physicians and practitioners somehow mischaracterized his complaints in their medical records. The Court is persuaded that he did in fact report to those physicians lower back pain.

Young's lack of candor regarding his medical history caused his credibility to suffer.

On September 1, 2016, Young reported to his captain that he had been injured three days earlier when a ladder fell and hit him on August 29, 2016, at around 1:30 in the morning. Young testified that he did not report the incident for three days because he did not realize that he was injured. Young was placed on light duty until September 5, 2016, when a crew boat came in and took him into shore.

At the time of the incident Young had with him onboard the vessel prescription pain medications for his back pain. Young had placed the medication in a vitamin bottle. Even though no witness perceived Young to be under the influence of any drugs at the time he was working aboard OMC's vessels, the Court is persuaded that Young was taking the prescribed medications in order to cope with the pain that he was experiencing so as to perform his job duties.

When Young saw Dr. Vellanki on September 6, 2016 for back pain, he did not mention anything about a ladder falling on him at work.

5

Young began treating with Dr. Zoran Cupic, who ordered a lumbar MRI. The MRI revealed subligamentous disc herniation.

Young points out that the medical record from his October 6, 2016 visit to Dr. Vellanki references bruising on his right lower back due to the ladder incident. It is not clear from the record, however, that the practitioner that met with Young on that day actually observed that bruising during an examination.

Dr. Cupic ultimately performed a one-level lumbar laminectomy, discectomy, and fusion with instrumentation and interbody grafting at L4-5. That surgery was successful and provided relief for most of Young's symptoms. Young's medical bills total $162,979.00.

There were no witnesses to the ladder falling on Young as alleged. If a ladder did in fact fall on Young on August 29, 2016, Young has not proven by a preponderance of the evidence that any such incident caused the disc herniation that necessitated surgery.

The Court found persuasive Dr. Gordon Nutik's opinion that there is a good likelihood that the disc looked before the incident the way that it looked on the MRI. The Court doubts that Young could have sustained a blow to his spine that was significant enough to herniate a disc yet leave him with the impression for three days thereafter that he was not injured.

Young's back was symptomatic before he boarded the vessel for his last hitch and before he was re-hired by OMC in 2015. Young did not sustain an injury in the service of the vessel.

## II. CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333, which confers on the federal courts original jurisdiction over admiralty and maritime claims. Venue is proper in this district and is not contested.

Young was a Jones Act seaman employed by OMC on August 29, 2016. The L/B JAMIE G. EYMARD was a vessel.

The Jones Act provides a remedy to seamen who sustain personal injury based on the negligence of their employer. *McBride v. Estis Well Serv., LLC*, 768 F.3d 382, 386 (5th Cir. 2014).

Young did not establish that negligence on the part of OMC or any of its employees or contractors played a role in the alleged ladder incident. OMC is not liable under the Jones Act.

The L/B JAMIE G. EYMARD was not unseaworthy on August 29, 2016.

A shipowner must pay maintenance and cure to any seaman who becomes ill or suffers an injury while in the service of a vessel. *Bertram v. Freeport McMoRan, Inc.*, 35 F.3d 1008, 1012 (5th Cir. 1994).

OMC has paid maintenance to Young. Young is not entitled to cure because he has not established that he sustained an injury while in the service of OMC's vessel.

OMC is entitled to judgment in its favor.

October 22, 2019

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE